

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MILAN A. MAREK,  )
             )
    Plaintiff  )
             )
             )    No. 07 C 1937
    v.        )
             )    The Honorable William J. Hibbler
             )
MICHAEL J. ASTRUE, Commissioner of  )
    Social Security  )
             )
    Defendant.  )

## MEMORANDUM OPINION AND ORDER

Milan Marek applied for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. § 416(I), 423, 1382. The Social Security Administration denied Marek's application at all stages of its review and Marek seeks review of the Administrative Law Judge's decision. 42 U.S.C. § 405(g), 1383(c)(2).

Marek worked for fifteen years as a general painter, handyman, and plumber. (Tr. 70). In April 2004, he suffered chemical burns on his left foot when dust from a countertop containing a urea-formaldehyde compound fell into his wet shoe causing a chemical burn after the moisture reactivated the compound. (Tr. 155). Unfortunately, the ulcers caused by the burn did not improve over time. (Tr. 155).

Marek saw Dr. George Podzamsky in January 2005. (Tr. 151-58). Dr. Podzamsky noted that Marek suffered from "possible coronary artery syndrome" and "chronic tachycardia," which had affected him all of his life (Tr. 157-58). Dr. Podzamsky also noted Marek's blood pressure, cholesterol and blood sugar. (Tr. 153, 57). Despite his observations, Podzamsky did not suggest that

1

these conditions produced any symptoms or otherwise limited Marek, other than a single instance of sub-sternal and left arm pain that lasted seven hours and did not recur and occasional pain in his cervical spine that is alleviated by chiropractic treatment. (Tr. 155, 58). Instead, most of Dr. Podzamsky's evaluation focused on two chemical ulcers on Marek's left foot. (Tr. 151-161). Dr. Podzamsky noted the ulcers healed slowly upon rest and antibiotic treatment, but that Marek continued to suffer swelling and pain especially when he walked for more than fifteen minutes and also at night. (Tr. 155). Dr. Podzamsky speculated that Marek had probable "adhesions with nerve entrapment" and that he "may need surgery." (Tr. 155). The only restriction to Marek's physical activity that Dr. Podzamsky noted was that Marek was restricted in walking due to the "post-ulcer adhesions." (Tr. 155, 158-59).

One month later, an agency physician reviewed Marek's medical file. (Tr. 169-76). After review of Marek's records, Dr. Madala Vidya concluded that the records suggested that the "ulcers are healing" and that he should be able to do medium work by May 2005. (Tr. 176). Dr. Vidya believed that Marek could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk with normal breaks for six hours in an eight hour day, sit with normal breaks for six hours in an eight hour day, but was limited in pushing or pulling objects because of the healing ulcers. (Tr. 170).

In April 2005, Marek returned to Dr. Podzamsky. (Tr. 179-80). Dr. Podzamsky noted that Marek suffered from superficial varcosities and that the ulceration on his foot had not yet healed. (Tr. 179). He noted that Marek could walk for only three minutes without pain. (Tr. 181). Dr. Podzamsky wrote that Marek's "main disability" was coronary artery disease. (Tr. 180). Despite this conclusion, Dr. Podzamsky noted that with treatment, Marek's triglycerides and cholesterol were both down, and that his LDL was normal. (Tr. 180). Without any explanation as to limitations that

2

Marek suffered, Dr. Podzamsky concluded that Marek was "disabled from labor for an indefinite length of time." (Tr. 180).

In May 2005, Dr. Robert Patey reviewed Marek's medical record and concurred with Dr. Vidya's February 2005 assessment of Marek's condition. (Tr. 190). In August 2005, Marek went to the emergency room of John Stroger Hospital, complaining of chest pain. (Tr. 194-199). Doctors placed Marek on a cardiac monitor and heparin, took x-rays that revealed no acute cardiopulmonary process, and discharged him when his condition improved. (Tr. 195-198).

By October 2005 the ulcers on Marek's left foot had yet to heal, and Marek visited Dr. Ann Mia. (Tr. 205). Dr. Mia noted swelling and pain between the fourth and fifth toe of Marek's left foot that limited his ability to walk. (Tr. 205). She observed that he walked unassisted with a limping antalgic gait. (Tr. 206). Dr. Mia also observed that there was numbness and limited sensitivity in Marek's toes and left foot. (Tr. 205, 208). Dr. Mia concluded that there could be "anticipated disability of varying degree, which depends on type of daily activities." (Tr. 209). She recommended that he engage in physical therapy and refrain from strenuous exercise but did not otherwise note any restrictions on his activity. (Tr. 208-09).

On Dr. Mia's recommendation, Marek visited Dr. Nell Allen. (Tr. 201-02). Dr. Allen confirmed Dr. Mia's observation of numbness as well as "pins and needles" sensations in Marek's left foot. (Tr. 201). Dr. Allen noted that his examination, but for the condition of his left foot, was within "normal limits." (Tr. 201). Dr. Allen concluded that Marek suffered a cutaneous nerve injury on the left foot that was perhaps superimposed upon some mild diabetic peripheral neuropathy. (Tr. 202).

3

A January 2006 follow up confirmed the findings of Drs. Mia and Allen. (Tr. 214). Then, Dr. Manisha Saraf Khanna performed an EMG and nerve conduction study. (Tr. 210-15). Dr. Khanna concluded that the study was consistent with peripheral neuropathy and that Marek experienced considerable pain as a result. (Tr. 214). Dr. Khanna recommended pain medication designed for peripheral neuropathy, such as Neurontin or Lyrica. (Tr. 214).

At his June 2006 hearing, Marek testified that he continued to experience pain if he walked for mor than three to five minutes. (Tr. 232). Marek testified that he uses a cane to help him walk. (Tr. 236). He further testified that he could stand for five minute intervals, but that he has trouble lifting things because the problems with his foot affect his balance. (Tr. 234-36). Marek also testified that he could sit for an half-hour or forty-five minutes, or two-and-one-half hours if he raised his foot. (Tr. 235). In addition, Marek testified that he naps several times a day, in part because the medication takes for his pain makes him drowsy and in part because he is depressed due to his inability to work. (Tr. 238-39). Although doctors have recommended physical therapy and other treatments, Marek testified that he cannot afford such expenses. (Tr. 234-240).

According to Marek, he can cook simple meals for himself, wash but not fold his laundry, and accompany his uncle to the store. (Tr. 241). During the day, Marek stated that he watches television, surfs the internet, draws, reads and naps. (Tr. 243-245).

The ALJ asked for the vocational expert's opinion regarding jobs available to two hypothetical individuals. When asked about an hypothetical individual who can lift 20 pounds occasionally and 10 pounds frequently, who could stand/walk with a cane for six hours during an eight hour work day, and who could sit for six hours during an eight hour work day, the expert concluded that the individual could not perform Marek's past relevant work. (Tr. 248-49). When

4

asked about a second hypothetical individual, one who could stand or walk for only two hours and who could never climb stairs and only occasionally balance, or kneel, the expert again concluded that the individual could not perform Marek's past relevant work but that he could perform sedentary jobs, such as electronics assembly, order clerk, or surveillance systems monitor. (Tr. 250-51). The expert also testified that if the individual needed to nap as needed, it would eliminate competitive employment. (Tr. 251). When cross-examined, the expert admitted that the second hypothetical individual could not perform the work of electronics assembler if he needed to elevate his leg as needed. (Tr. 251).

After the hearing, the ALJ proceeded through the standard five-step inquiry. *See* 20 C.F.R. 404.1520. The ALJ initially ruled that Marek suffered from three severe impairments: the ulcers on his left foot; non-insulin diabetes mellitus with peripheral neuropathy; and coronary artery disease. (Tr. 13). The ALJ ruled, however, that the impairments did not equal the impairments listed in 20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926 and therefore assessed Marek's residual functional capacity. (Tr. 13-14). The ALJ rejected the less restrictive RFC suggested by the Agency's physician, and concluded instead that Marek could lift only 10 pounds frequently, stand or walk with a cane only 2 hours in an 8 hour work day with a sit/stand option at will, and could sit 6 hours in an 8 hour workday. (Tr. 14).

In ruling that Marek had the RFC to stand or walk, with a sit at will option, for 2 hours and sit for six hours during an 8 hour day, the ALJ commented that Marek's testimony regarding the amount of time he needed to nap "appeared to be self-imposed." (Tr. 14). The ALJ tied this conclusion to Marek's self-report of his daily activities, which included basic household duties, using a personal computer, reading, watching television, and drawing. The ALJ also did not give full

5

weight to Dr. Podzamsky's cursory opinion that Marek was disabled because Dr. Podzamsky never adequately explained the basis of that opinion. (Tr. 14-15). The ALJ carefully noted the restrictions upon Marek's ability to function that Dr. Podzamsky explicitly discussed and excluded none of these from her assessment of Marek's RFC. (Tr. 14-15). The ALJ observed that Dr. Podzamsky noted that Marek suffered symptoms related to ordinary physical activity, such as fatigue, palpitation, dyspnea or anginal discomfort. (Tr. 15). Similarly, the ALJ rejected the opinion of Dr. Mia because it contained no specific work-related limitations. (Tr. 15). Based on the vocational expert's testimony regarding security systems monitoring, the ALJ found that Marek could perform certain sedentary occupations. (Tr. 16). The ALJ therefore concluded that Marek was not disabled. (Tr. 16).

When reviewing the findings of the ALJ, this Court is not free to replace the ALJ's estimate of the medical evidence with its own. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Instead, the Court inquires only as to whether substantial evidence supports the ALJ's conclusions, meaning that "the decision rests on 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971)). The ALJ must rest the denial of benefits on adequate evidence and explain why contrary evidence does not persuade. *Id.*

Marek first argues that the ALJ erred in finding that his allegations regarding his limitations were not credible. Marek suggests that the ALJ concluded that his complaints regarding his coronary artery disease were not credible because Marek did not fully comply with treatment. Marek, however, misrepresents the ALJ's decision. The ALJ never tied Marek's credibility to his compliance with treatment. (Tr. 14). Instead, the ALJ's comment regarding Marek's compliance

6

with treatment related to the ALJ's observation that the medical evidence revealed no complications or symptoms from this condition. (Tr. 14). The ALJ's conclusion is supported by substantial evidence: none of the doctors that examined Marek or reviewed his file suggested any specific limitations or symptoms resulting from his coronary artery disease. (Tr. 157-58, 180, 195-98). The only medical evidence that Marek suffered any symptoms related to his coronary artery disease are two isolated instances of chest pain, neither of which resulted in long term consequences. (Tr. 158, 194-98).

The ALJ does briefly mention Marek's credibility, stating that although his impairments could cause some symptoms, his statements regarding their intensity and limiting effects were not entirely credible. (Tr. 14). An ALJ may not disregard a claimant's allegations of pain solely because it seems in excess of the objective medical evidence. *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006). That, however, is not what the ALJ did in this case. Indeed, to a large extent, the ALJ accepted Marek's allegation that his pain limited his ability to stand and walk. The agency physician opined that Marek could stand or walk for six hours in an eight hour day, an opinion which the ALJ rejected. Instead, the ALJ held that the ulcers on Marek's foot limited him to standing only two hours per workday and further required that he be allowed to use a cane to walk and choose to sit at will.

Although the ALJ's opinion is spartan, she references both the medical evidence and Marek's testimony regarding his daily activity, when she assesses his RFC and notes that his claims regarding the intensity and persistence of his symptoms are not entirely credible. The ALJ comments that Marek's treating physician indicated no symptoms, such as fatigue, resulting from ordinary physical activity, but instead twice indicated Marek's only limitation was an ability to walk for more than a

7

short period of time. (Tr. 15). The ALJ also noted that Marek engaged in substantial household activities — basic chores, using the computer, reading, watching television, and drawing, and connected that testimony to her finding regarding his credibility regarding both his alleged need to nap and his complaints of pain. An ALJ may rely on a claimant's daily activity as grounds to disbelieve claims of continuous pain. *Johnson*, 449 F.3d at 806-07; *Schmidt v. Barnhart*, 395 F.3d 737, 747 (7th Cir. 2005); *Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1998) (ability to do light chores and read is consistent with ability to do sedentary work).

The Court concludes that the ALJ's credibility determination is not patently wrong, is supported by substantial evidence, and is sufficiently detailed (though barely so) to allow the Court to trace her path of reasoning.

Marek next argues that the ALJ failed to incorporate all of his limitations into his RFC. Specifically, Marek argues that the ALJ did not explicitly reject Marek's testimony that he needs to elevate his foot if he sits for more than thirty minutes and that the ALJ did not consider the effect of his medication. The ALJ did fail to mention in her opinion any limitation based upon Marek's need to elevate his foot, but the omission is harmless. When the ALJ cross-examined the vocational expert, the expert testified that such a limitation would not disqualify Marek from certain sedentary jobs. (Tr. 251). Similarly, though the ALJ did not mention Marek's medication explicitly, she did note that his "need for napping . . . appears self-imposed." In support, the ALJ referenced Marek's daily activities and later noted Marek failed to complain of fatigue to his treating physician.

Marek also argues that the ALJ should have inquired further into Marek's statement that he had "some problems" with his hands. (Tr. 237). Although nothing in the objective medical record suggested that Marek experienced any difficulty using his hands, the ALJ inquired briefly whether

8

Marek had trouble using them. He replied that he did, and the ALJ inquired whether he received any treatment or ever dropped anything to which Marek responded negatively. (Tr. 237). Moreover, Marek reported that he had no trouble using kitchen tools, opening jars, using the computer, ironing, and drawing, all of which suggest that he has little trouble using his hands. (Tr. 103-109). There simply was no reason, based on the evidence before her, for the ALJ to order a physical exam to determine whether Marek had any arm or hand limitations, and the ALJ's decision not to gather more evidence is one entitled to deference. *Kendrick v. Sec'y of Health & Human Servs.*, 998 F.2d 455, 458 (7th Cir. 1993). Similarly, the ALJ's decision not to order a psychological exam, to assess Marek's alleged depression, is also entitled to deference.

Finally, Marek raises various issues with the vocational expert's testimony, none of which are convincing. Marek initially repackages his argument regarding the ALJ's failure to determine whether he had any limitations on the use of his hands, suggesting that the ALJ should have included such a limitation in her hypothetical to the vocational expert. Similarly, Marek argues that the vocational expert's testimony did not factor in the limitations caused by Marek's medication. As noted earlier, the ALJ's decision not to gather evidence regarding alleged limitations is entitled to deference. *See Sims v. Barnhart*, 309 F. 3d 424, 431-32 (7th Cir. 2002) (hypothetical question need only reflect the impairments reflected in the record).

Marek also points to an error made by the vocational expert in classifying the job of "electronics assembler" as sedentary employment with light exertion level. The vocational expert indicated that the Dictionary of Occupational Titles assigns the number of 726.684-010 to "electronics assembler." In fact, the DOT assigns that number to the job of "capacitor-pack -press operator," which requires medium exertion level. The DOT assigns the number of 726.684-018 to

"electronics assembler." Marek's representative did not question the vocational expert during the hearing regarding the job title, and it appears that the expert simply misstated the proper number. In any event, the vocational expert identified over 200,000 jobs, apart from those of "electronics assembler" that Marek could perform, and therefore the error, if any, was harmless. *See Coleman v. Astrue*, No. 07-1729, 2008 WL 695045, at * 5 (Mar. 14, 2008) (ALJ's failure to comply with Ruling 00-4p and inquire about inconsistency between DOT and vocational expert testimony harmless because sufficient number of other jobs remained available).

Finally, Marek briefly contends that the job of "surveillance systems monitor" would not be available to him without further training. In support, Marek submits the opinion of a vocational expert in another case that was available prior to Marek's hearing but that he did not submit to the ALJ. Marek does not request remand for the Commission to consider new evidence, nor does he suggest that he had good cause for not including it (or similar evidence) earlier, as 42 U.S.C. § 405(g) requires. 42 U.S.C. § 405(g); *Rasmussen v. Astrue*, No. 07-1771, 2007 WL 3326524, at * 4 (7th Cir. Nov. 6, 2007).

The Court concludes that substantial evidence supports the agency's finding that Marek is not disabled. Consequently, the Court AFFIRMS the decision of the Commissioner.

4/21/08
Dated

Hon. William J. Hibbler
United States District Court